The opinion of the Court was delivered by
DarojaN, Ch.
Jacob Crosswhite, by his last will and testament, bearing date the 11th July, 1825, gave to his “son, William Crosswhite, and to his children after his death,” certain slaves who were referred to by name, , and a tract of land which was specifically described. He had in preceding clauses given to his daughter Sarah Davidson, negroes and a tract of land, and to his daughter Betsey Roebuck, negroes, in the same form of expression: that is to say, the gift was to them, “ and to their children after their death.” By the fifth clause, he proceeds to say, “ it is my intention, and I do hereby make it the express condition of the previous devises and bequests, that in the event of either of my children, the aforesaid devisees and legatees, dying without issue, then and in that case, that the property herein before devised and bequ'eathed to the aforesaid child, or children, who may die without issue, shall revert to my estate, and be divided among my surviving children or their issue.”
*89 The property given by the testator to his children, went into their possession respectively, and was enjoyed by them after his death.
Some time, in the early part of the year 1833, Wm. Cross-white, having duly executed his will, died, leaving surviving him, his wife Lucy, who afterwards intermarried with James S. Spearman, and an only child, John Bobo Crosswhite, then an infant of about the age of three years.
By his will Wm. Crosswhite gave to Lucy a tract of land called the Toland tract and five negroes, with some other chattels, all of which were described, one-third of his live stock, and provisions for one year. In his will he says, “ I give, devise and bequeath to my son, John Bobo Crosswhite, upon his attaining the age of 21 years, absolutely and forever, the whole rest and residue of my real and personal estate, with its future increase, and annual profits. Should he die before he comes to the age of 21 years, having lawful issue, then I give the same absolutely to such issue. But in the event of his dying before he attains the age of 21 years, without lawful issue diving at his death, then I give and devise absolutely and forever, the one half of the property contained in this clause, to my wife Lucy Crosswhite, one-fourth in the same absolutely to the children of my sister Sarah Davidson, and one-fourth in like manner, to the children of my sister Elizabeth” (Roebuck.)
On the 4th June succeeding the death of Wm. Crosswhite, Samuel Davidson, the surviving executor of Jacob Crosswhite, filed a bill in this Court against John Bozeman, the executor of Wm. Crosswhite, Lucy Crosswhite, and John Bobo Crosswhite, charging that Wm. Crosswhite had derived the greater portion of the property of which he died possessed, both real and personal, under the 4th clause of the will of his father, the said Jacob ; and that the said William only took a life estate therein, &c. He prayed, among other things, that it might “be ordered and decreed, that all the property in the possession of William Crosswhite, at his death, and which formerly belonged to Jacob Cross white, passed under the will of Jacob Crosswhite, on the *90 death of William Crosswhite, to his son John Bobo Crosswhite”, or to himself as executor, &c.
On the 16th July, after the filing of the bilí, John Bozeman, the executor of Wm. Crosswhite, put in his answer; wherein he insisted that his testator took the property given to him by his father’s will in his own absolute right; and that the plaintiff had no right or claim to the same; but if otherwise, he in sisted that the said property belonged to John Bobo Crosswhite as remainderman, and submitted to the Court, whether John Bobo Crosswhite could take both under and against his father’s will. An order pro confesso was taken against Lucy Cross-white : and the case came on for trial at July Term, L833, on the bill, the answer of Bozeman, and that of John Bobo, who answering by guardian ad litem submitted his rights to the protection of the Court.
The Chancellor who heard the cause, decreed, that William Crosswhite took a life estate in the property given to him by the 4th clause of his father’s will, with a remainder in fee to his son John Bobo Crosswhite. He further decreed that John Bobo could not take under and against his father’s will, but that it was a case of election. But that as he was an infant, and could not elect for himself, the Court would elect for him; and in order that the Court might elect understandingly, it was referred to the Commissioner to inquire and report upon the value of the benefits which the infant might derive under the will of his father, and that of his grand-father.
No election was made ; nor was the report ever submitted ; for in the same year John Bobo Crosswhite died, being an infant of tender years ; and the case abated. At the ensuing term of the Court, it was struck from the docket.
Thus the .proceeding rested until the 25th May, 1852, when the present plaintiffs filed their bill. They are the children of Sarah Davidson, and Elizabeth Roebuck. They claim under that clause of the will of William Crosswhite, in which he gives, in the event of his son John Bobo dying under the age of 21 years, and without issue living at his death, one-fourth of the *91 property which he had previously given to John Bobo, to the children of Sarah Davidson, and one-fourth thereof to the children of Elizabeth Roebuck. They further claim that William Crosswhite took an absolute estate in the property given to him by his father’s will, and not a life estate as the Court had decreed. The bill is brought against the executor of Bozeman, and the representatives of Lucy Crosswhite, afterwards Lucy Spearman, who on the decase of her son, John Bobo Crosswhite obtained possession of the property. They pray for a revival of the bill of 1833, which had abated on the death of John Bobo, for recovery of their share of the property, an account for rents, and profits, &c.
It can hardly be questioned, that the limitations in favor of the plaintiffs, in the will of William Crosswhite, are valid. And if the estate of which they seek a partition and account, was the absolute property of William Crosswhite, and if there were no other impediments, the plaintiffs would be entitled to a decree.
The defendants have raised an objection in limine. They deny that the plaintiffs have a right, under the circumstances^ to revive the abated bill. They further contend, that the present plaintiffs, claiming under the will of William Crosswhite, were represented by the executor thereof in the former suit, and are concluded by the decree rendered in that cause. And finally they say, that if these impediments to the recovery of the plaintiffs did not exist, upon the construction of Jacob Cross-white’s Will William Crosswhite took only a life estate, and his son John Bobo took as remainderman. If the last proposition be true, it will be unnecessary to discuss and decide the preceding questions that have been raised ; for in that view of the case, the plaintiffs can have no interest in the subject matter.
In the argument of this appeal, each party has appealed to, and relied upon Wild’s case, 6 Co. 17. They therefore cannot dispute its authority. Indeed, its authority will not admit of question from any quarter. For as it is said by the learned and pre-eminent jurist who reports it, “ the case for difficulty was argued before all the Judges of England.” The principles re *92 volved in. that case have been received for law from that day to this in England, and are confessedly the law of South-Carolina. It is pleasant and profitable in our judicial researches to ascend to the pure fountains of the common law, and to deduce from thence just and true expositions of the principles of that system. It would be better if this were oftener done. The wisdom of the sages of the law who lived in those early times, we are too prone to take at second hand.
Wild’s case, by the special verdict of the jury, was to this effect: “ Land was devised to A. for life; remainder to B., and the heirs of his body; remainder to Rowland Wild and his wife, and after their decease to their children — Howland and his wife then having a son and daughter. Afterwards the de-visor died; and after his decease A. died. B. died without issue. Rowland and his wife also died, and the son had issue, a daughter and died. If this daughter should have the land or not, was the question: and it consisted only upon the consideration what estate Rowland Wild and his wife had, viz: if they had an estate tail, or an estate for life with remainder to their children for life ”.
In Wild’s case there were three propositions “resolved as .good law.” First, “ If A. devises his lands to B. and to his children, or issues, and he hath not any issue at the time of the devise, that the same is an estate tail; for the intent of the devisor is manifest and certain, that his children or issues should take; and as immediate devisees they cannot take, because-they are not in rerum natura ; and by way of remainder they cannot take, for that was not his intent, for the gift is immediate; therefore such words shall be taken as words of limitation”. Second, “If a man devises lands to A. and to his children, or issue, and he then has children or issue of his body, then his express intent may take effect according to the rule of the common law, and no certain and manifest intent appears in the will to the contrary. Therefore, in such case, they shall have but a joint estate for life”. Third, “ But it was resolved, that if a man, as in the case at bar, devises land to husband and wife, and after *93 their decease, to their children, or the remainder to their children ; in this case, although they have not any child at the time, yet every child they shall have after, may take by way of remainder, according to the rule of the common law; for the intent appears that their children shall take immediately, — but after the decease of Rowland and wife The cases cited in' Thomas’ edition of the Reports most amply sustain the principles adjudged in this case. More particular reference to them here will be unnecessary.
The plaintiffs’ counsel, in their argument, attempted to bring the case at bar, under the first proposition in Wild’s case. The first proposition is good law, beyond all question. Undoubtedly, if a man devises property to A. and his children or issue, A. having no children at the time of the devise, it would create a fee tail in England, and a fee conditional in South-Carolina. There is a manifest intent of an immediate gift to the children.* But they not being in existence, cannot take; for they must take at once, or not. at all. There is no indication of an intention that they are to take in succession to A. and after the termition of a previous estate in him. Therefore, if they take any interest at all, it must be by descent per formam doni; as in an estate tail or fee conditional.
The case now under judgment does not come within this class. Here, (in the will of Jacob Crosswhite,) there is a manifest intention, not only that the children of William shall take, but that they shall take in succession to him, after his decease, and the termination of a life estate in him. It obviously falls within the thS’d proposition, which was considered to.have embraced the issue in Wild’s case. There is the most perfect analogy. In the one case, the devise was to Rowland Wild and his wife, and after their decease to their children. In the other, the devise is to William Crosswhite, and to his children after his death. Death and decease are synonymous words. The *94 only other difference is the transposition of words, without the slightest alteration of the sense. The most subtle sophistry cannot detect a seemingly material difference. If Wild’s case be authority, (and who would have the temerity to insinuate a doubt of it,) then under the 4th clause of Jacob Crosswhite’s will, his son William took only a life estate, with a remainder to his children; that is, as it has resulted, to his son John Bobo Crosswhite.
The only case which presents an apparent contradiction to this conclusion, is that of Johnson vs. Johnson, McM. Eq. 345. But when viewed in the proper light, it recognizes and supports, instead of raising a question as to the authority of Wild’s case; for the latter was invoked as affording an authoritative rule by which Johnson vs. Johnson was to be decided.
In Johnson vs. Johnson, the testator (James Stuart) gave to his “ daughter Maria Johnson, and to her children after her ”, a tract of land, a negro, and sundry other chattels. It was held, that the children could not take, either as immediate de-visees, or as remaindermen. That case might have been decided the other way: in fact it was one of those ambiguous cases, which might have been decided either way, without doing much violence to established rules. The only difference between that and the present case is the omission of the word “death”, following the words “after her”. The omitted word might have been supplied by implication, to carry into effect the intention of the testator, that the children should take after the death of the first taker. That construction would have brought the case on a parallel with Wild’s case, and the case in hand. It is clear however that the Court thought the words “ to Maria Johnson and to her children after her”, equivalent to the words, to Maria Johnson and her issue after her, and that it was intended by the testator, that the children or issue of Maria should take after her in indefinite succession ; thus constituting a fee conditional as to the land, and an absolute estate in Maria, as to the chattels, under the first and not the third resolution, in Wild’s case. That the Court con *95 strued the gift to Maria Johnson, and her children after her, as a gift to her, and to her children or issue to take in indefinite succession, is made more manifest by the subsequent language of the Chancellor, who delivered the opinion of the Court. “ It would be different”, says he, “áf there was a limitation over in the event of Mrs. Johnson’s leaving no issue living at her death. That would show an intention of giving in remainder to the children living at her death, and would restrict the mother to a life estate ”. The very cases cited, show that such was the the view of the Court, for they are pertinent only to that construction. And assuming that such was the intent of the testator, the decision in Johnson vs. Johnson does not admit of dispute or cavil.
In Shearman vs. Angel, Bail. Eq., 351, the words of the devise of a tract of land were “ to my mother for life, and at her decease to her children forever.” A bequest of slaves to the testator’s mother was couched in the same language. The circuit decree, both as to the land and the slaves, gave the mother a life estate, with remainder to the children. Prom this part of the circui$«lecree no appeal was taken. A bequest of $ 1000 and some other chattels to the testator’s mother and to her children forever, was held to constitute an absolute estate in the mother,- and this construction was affirmed on appeal. I cite this case as affording some analogies, though not strictly in point.
Upon a construction of the will of Jacob Cross white, founded upon the most unquestionable principles and upon the highest authority, this Court has come to the conclusion, that William Crosswhite took a life estate both as to the realty and the personalty, with a remainder to John Bobo Crosswhite. It follows that the present plaintiffs have no interest in the subject matter.
It is therefore ordered and decreed that the bill be dismissed.
Dunkin and Ward law, CC., concurred.
Johnston, Ch., gave no opinion.

Bill dismissed.

The same words would give an absolute estate in personal property. It is familiar doctrine, that words creating afee tail or fee conditional, will give an absolute estate in chattels.